IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2001 Session

## ALAN DALE BAILEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Coffee County**
**No. 30,566     L. Craig Johnson, Judge**

---

**No. M2001-01018-CCA-R3-PC - Filed February 8, 2002**

---

The petitioner, Alan Dale Bailey, appeals the Coffee County Circuit Court's denial of post-conviction relief. The petitioner sought relief from his 1999 Coffee County convictions of aggravated burglary and sexual battery on the basis that his guilty pleas to those charges were unknowing and involuntary and were prompted by ineffective assistance of counsel. The petitioner's primary complaints focus upon trial counsel's failure to inform the petitioner about the impact of a conviction of a sexual offense, including the risk that parole might not be granted. The trial court denied relief after an evidentiary hearing, and we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS, JJ., joined.

Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the Appellant, Alan Dale Bailey.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and C. Michael Layne, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The district public defender was appointed in January, 1999 to represent the petitioner on charges of aggravated burglary and sexual battery. On May 25, 1999, the petitioner submitted, and the trial court approved, a plea agreement. Pursuant to the agreement, the court imposed convictions of aggravated burglary, with a Range I, four-year incarcerative sentence, and of sexual battery, with a Range I, two-year incarcerative sentence. The sentences were imposed to run concurrently.

In his petition for post-conviction relief, the petitioner challenges his convictions on the basis that his guilty pleas were unknowing and involuntary and were the product of ineffective assistance of counsel. Specifically, he alleges that the public defender told him that, after serving 30 percent of his four-year sentence, he should be home in 14.4 months. He claims that the public

defender did not tell him that he would be labeled a sex offender, would undergo DNA identification as a sex offender, and would be required to serve 100 percent of his four-year sentence before being released.

At the post-conviction evidentiary hearing, both the petitioner and his wife testified that the public defender and his investigator told them that the petitioner, with good behavior, would be released from custody in fourteen months. The petitioner testified that his counsel failed to advise him that he would be listed on a sex-offender registry for the rest of his life, that he would have to provide a DNA sample for sex-offender identification, that his picture would appear on the internet identifying him as a sex offender, and that he would have to serve the entirety of the four-year sentence in prison because of his sex-offender status. The petitioner testified that, at the time of the hearing, he had already served eighteen months of his sentence and would be required to serve the entire four years. He stated that he would not have pleaded guilty had he known about these aspects of his plea.

The public defender's investigator testified that he presented the plea offer to the petitioner at counsel's request and calculated for him the release eligibility date of 14.4 months, being 30 percent of the four-year sentence. The investigator did not guarantee a release date; he testified that he "would never tell anybody they would get out at [the release eligibility] time because [he] simply [did] not know."

The district public defender testified at the evidentiary hearing that he began representing the petitioner prior to the preliminary hearing. Throughout the proceedings, the petitioner wanted to go to trial. Counsel stated that the case had been fully investigated, he had obtained complete discovery, and he was ready to try the case. Just before trial, however, at a meeting in counsel's office, the petitioner decided to accept the state's offer of an effective four-year sentence. Counsel told the petitioner that, with good behavior, he would be eligible for parole in 14.4 months, that counsel could not guarantee he would be released upon his release eligibility date, and that the Department of Correction "runs by its rules rather than by law a lot of times." Counsel testified that, prior to the plea, he told the petitioner about the DNA test. Additionally, the petitioner read the proposed conviction judgments, which stated the requirement of the DNA test. Before the plea, counsel also gave the petitioner a copy of the statutes proscribing the charged offenses and setting forth the sentencing guidelines.

Counsel testified that he thought the plea offer was beneficial to the petitioner, who otherwise could have been classified as a Range II offender. Counsel denied making any promises to influence the petitioner into pleading or coercing the petitioner into making the plea. Counsel admitted telling the petitioner that he "had the keys to the jail in his pocket."

The transcript of the plea-submission hearing was admitted in the post-conviction evidentiary hearing and reveals that the trial court thoroughly administered the customary litany of explanations of rights and admonitions about waiving the rights. The petitioner acknowledged under oath that he was making the plea freely, voluntarily, and without fear. He acknowledged that he

understood the nature of the charges, that counsel had explained the elements of the offenses, and that he was pleading guilty because he was guilty.

Before examining the petitioner's claims that his plea was vitiated by the lack of pertinent information and was prompted by ineffective assistance of counsel, we review a few familiar principles of law. Post-conviction relief is available when "a conviction or sentence is void or voidable because of the abridgment" of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). The burden rests upon a post-conviction petitioner to establish his claims by clear and convincing evidence. *Id.* § 40-30-210(f).

When a post-conviction petitioner seeks relief on the basis of ineffective assistance of counsel, he or she must establish that the service rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Also, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067 (1984). Should the petitioner fail to establish either factor, he or she is not entitled to relief. *See id.* at 697, 104 S. Ct. at 2069. "The *Strickland* standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution." *Michael E. Christian v. State*, No. E2000-00922-CCA-R3-PC, slip op. at 9 (Tenn. Crim. App., Knoxville, June 24, 2000), *perm. app. denied* (Tenn. 2001); *see State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). A court scrutinizing a claim of ineffective assistance of counsel must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

When a post-conviction petitioner asserts that ineffective assistance of trial counsel resulted in a guilty plea the "prejudice" prong of *Strickland* must focus "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 370 (1985). The petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to demonstrate that he likely would have fared better at trial than he did by pleading guilty, although evidence of this type can be persuasive that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59-60, 106 S. Ct. at 370.

The Due Process Clause of the United States Constitution requires that guilty pleas be knowing and voluntary. *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2001); see *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). The constitutional mandate that guilty pleas be knowing is essentially fulfilled by the court informing the accused of his or her constitutional rights against self-incrimination, to confront witnesses, and to trial by jury. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1712.

In the present case, we discern from our review of the record before us that the parties and the court below were at a loss to comprehend any basis for the petitioner being required to serve

his full sentence by virtue of being convicted of a sexual offense. Our review of Tennessee statutes, however, reveals several bases for limiting or preventing parole to sexual offenders. Code section 40-35-321(c) provides that a person convicted of sexual battery, *inter alia*, must submit a specimen for DNA analysis, and such a person may not be released until he or she provides the specimen. Tenn. Code Ann. § 40-35-321(c) (Supp. 2001). Section 41-21-235(b), as it applied to the time of the petitioner's offenses committed on August 26, 1998, provides, "Successful participation and completion of [a sexual abuse treatment program for incarcerated sex offenders] shall be a consideration for parole from a correctional institution." *Id*. § 41-21-235(b). Finally, Code section 40-35-503(c) provides,

> No person convicted of a sex crime shall be released on parole unless a psychiatrist or licensed psychologist designated as a health service provider has examined and evaluated such inmate and certified that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement.

*Id*. § 40-35-503(c).[1]

## I. Knowing Guilty Plea.

The *Boykin* requirement that guilty pleas be knowing and voluntary may stand independently of the claim that an unknowing or involuntary guilty plea is the result of ineffective assistance of counsel. As we have pointed out above, the constitution requires that, to satisfy due process, the trial court must inform the guilty-pleading defendant of his rights to avoid self-incrimination, to confront witnesses, and to be tried by a jury. However, "a guilty plea is not rendered constitutionally infirm because a criminal defendant is not informed about 'the details of his parole eligibility, including the possibility of being ineligible for parole.'" *Rickey Sams v. State*, No. 03C01-9511-CC-00368, slip op. at 4, (Tenn. Crim. App., Knoxville, Nov. 14, 1996) (quoting *King v. Dalton* 17 F.3d 151, 154 (6th Cir. 1994), *perm. app. denied* (Tenn. 1997). Thus, in the present case, the petitioner's claim that he should have been informed of the various consequences of being convicted of a sex offense is not a constitution-based claim. As we have also pointed out above, post-conviction relief is only available to address the abridgment of a constitutional right. Therefore, the petitioner's claim that he had a right to be informed of the sex-offense conditions to or consequences of his conviction and sentence is not cognizable in this proceeding. *Id*.

## II. Ineffective Assistance of Counsel.

### A. Performance Prong.

---

[1] *We* are at a loss to comprehend how this statutory provision would affect the service of the aggravated burglary sentence, the lengthier of the two concurrent sentences.

We now review the adequacy of counsel's performance in assisting the petitioner to enter a knowing and voluntary plea. This court has held that "failure of counsel to discuss parole eligibility or the parole condition of successfully completing a sexual offender treatment program does not constitute ineffective assistance of counsel." *Ricky Rutledge v. State*, No. 01C01-9706-CC-00201, slip op. at 11 (Tenn. Crim. App., Nashville, July 2, 1998), *perm. app. denied* (Tenn. 1999) (basing holding upon the principle that "'silence by counsel' on 'any collateral consequences of a plea' does not 'fall below the range of competence demanded of attorneys in criminal cases,'" quoting *Adkins v. State*, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994)); *see also Rickey Sams*, slip op. at 5 (counsel provided effective assistance by informing guilty-pleading defendant of his release eligibility date, despite not informing him of the applicability and effect of the parole provision in Code section 40-35-503(c)); *Rogers Lamont McKinley v. State*, No. 03C01-9308-CR-00255, slip op. at 9-11 (Tenn. Crim. App., Knoxville, Aug. 17, 1994) (refusing to find that "the failure of the Defendant's attorneys to advise the Defendant of [the terms of Code section 40-35-503(c)] constituted ineffective assistance of counsel"). Thus, a defendant's counsel does not deficiently perform by remaining silent on the matter of the "collateral consequences" implicated by that defendant pleading guilty to sexual battery.

We must now point out, however, that *Ricky Rutledge* was "not a case, as in *Hill v. Lockhart* . . . in which counsel [had] given erroneous advice." *See Ricky Rutledge*, slip op. at 10 n.6. In the present case, however, counsel gave erroneous advice, as opposed to merely remaining silent, when he told the petitioner that the petitioner held "the keys to the jail in his pocket." In effect, counsel told the petitioner that he had it within his power to win release once he had attained the release eligibility date. Because Code section 40-35-503(c) conditions the release of a person convicted of committing a "sex crime" upon a professional's certification that the offender is not likely to commit further sexual assaults, the inmate does not hold "the keys to the jail." Such an inmate, even one who has provided the DNA sampling and who has completed the treatment program, lacks the *power* to win his release. To the extent that counsel ventured this bit of inaccurate advice, he performed deficiently in representing the petitioner.

## B. Prejudice Prong.

In the wake of this limited instance of deficient performance, however, we conclude that the petitioner has failed to establish the "prejudice prong" of *Strickland* and *Hill.* We realize that the petitioner testified at the evidentiary hearing that he would have eschewed the plea had he known that he would be branded a sex offender and that he would serve more than 14.4 months in prison. This testimony, however, does not *ipso facto* establish that he would not have pleaded guilty but for counsel's deficient performance. The attempt to establish the "but for" claim through his own testimony exclusively is fraught with the risk that the finder of fact might not accredit him as a witness. *See Sneed v. State*, 942 S.W.2d 567, 569 (Tenn. Crim. App. 1996) (trial judge who accepted guilty plea and later presided over post-conviction evidentiary hearing "was in a proper position to consider the petitioner's credibility at both appearances" and to give "greater credence to his responses" during the plea hearing than to his claims during the evidentiary hearing). Indeed, in the present case, the post-conviction court specifically found that the petitioner was not a credible

witness. We defer to the lower court's resolution of credibility issues. *Massey v. State*, 929 S.W.2d 399, 403 (Tenn. Crim. App. 1996); *Taylor v. State*, 875 S.W.2d 684, 686 (Tenn. Crim. App. 1993).

Moreover, as *Hill* suggests, the probability that the petitioner might have received a more severe penalty following a trial may, in a proper case, serve as an indicator that the petitioner nevertheless would have pleaded guilty had he known all the relevant facts. Given that he would be characterized as a sex offender, forced to undergo DNA testing, subjected to monitoring after leaving custody, and put at risk for being denied any parole - - all because of his status in being convicted of sexual battery - - he nevertheless would have faced the same prospects in the wake of a jury conviction. Indeed, the prospects could well have been exacerbated by the imposition of a longer term of incarceration. *See Wade v. State*, 914 S.W. 2d 97, 104 (Tenn. Crim. App. 1995); *Carl A. Jones v. State*, No. 02C01-9204-CC-00099, slip op. at 9 (Tenn. Crim. App., Jackson, Oct. 21, 1992) (despite counsel's failure to acquaint petitioner with Code section 40-35-503(c), no prejudice was shown because petitioner "could not have avoided these requirements" by going to trial). Given this circumstance, we cannot conclude that the petitioner has established by clear and convincing evidence that he would not have pleaded guilty but for counsel's performance.

Therefore, for these reasons, we hold that the petitioner has failed to establish the prejudice prong promulgated in *Strickland* and *Hill*, and consequently he has failed to establish his claim of ineffective assistance of counsel.

### III. Conclusion.

We affirm the denial of post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE